Good morning and welcome to the Ninth Circuit Court of Appeals. My name is Morgan Christen. I'm one of the judges on the circuit court. I'm delighted to be sitting this week with my colleagues, also circuit court colleagues, Judge Fletcher, whose chambers are in San Francisco, and Judge Van Dyke, who's joining us from Reno, Nevada. We have a couple of cases submitted on the briefs today. They are case number 23-55666, Rosengren v. S.F. Markets, and 23-55748, Halverson v. Kosmola. With that, we'll go on to the first case on the oral argument calendar. It is 20-72437, Nawaz v. Garland. We're ready for your argument, counsel. Go right ahead. Good morning, Your Honors, and may it please the Court. My name is Elizabeth Bowman, pro bono counsel for Petitioner Mr. Ahmed Nawaz. I would like to reserve two minutes of my time for rebuttal, please. Sure, just keep an eye on the clock. Your Honors, this case is about fairness to asylum applicants, and there are two issues I would like to address on that point. First, the agency's adverse credibility determination was made in error, and second, Mr. Nawaz has demonstrated a well-founded fear of future persecution. To my first point, as this Court knows and as this Court has followed, mere omissions are insufficient to uphold an adverse credibility determination. The agency's finding here was not based on inconsistencies in Mr. Nawaz's testimony, but simply Mr. Nawaz providing more details about his asylum claim when he was asked by the judges. That's the point, right? There's omissions and then there's omissions, right? And the problem we have here, I think the general proposition you stated is exactly right, and what we're trying to grapple with is the IJ here decided that this story was embellished over time with the addition of additional details. That's my paraphrase. Could you speak to that? Yes, Your Honor, and I take your point that there's a line between one type of omission and another type of omission, but the way that this Court has illustrated omissions that are not sufficient to uphold an adverse credibility determination is when the omissions do not actually change the underlying story. So here we have Mr. Nawaz. He came into the United States, and during his credible fear screening interview, he said that he was attacked at his Shia prayer group, and then afterwards he faced threats, continued threats, and that's why he left Pakistan. So what did you say exactly in that interview about continued threats? So, Your Honor, during Mr. Nawaz's credible fear screening interview, Mr. Nawaz was asked, other than the Shia prayer group, what did he face, and he responded, they continued to threaten me and my mother was concerned. And at that point, the asylum officer asked no follow-up questions about the threats or why Mr. Nawaz's mother would be concerned for Mr. Nawaz's safety. And this is completely different than the immigration hearing where the immigration judge did ask those follow-up questions specifically to elicit more information from Mr. Nawaz. So, for example, during the immigration court hearing, the immigration judge asked follow-up questions like, what did they say to you? How did they know you were the leader of the Shia prayer group? When did these threats occur? Let me do it with a little more pointed question. Also in that initial interview, he says, after three or four days, they threatened to kill us if we continued to report to the police that they would kill us. So he does say things about it wasn't just that episode where they were beaten and chased out of that area. Something that's not in the credible fear interview is that he continued to put up posters and was being threatened because of his membership and contribution to the group that continued to put up posters. Does that matter? Judge Fletcher, I believe that's just—that isn't necessarily an inconsistency. As you pointed out— Well, it's not inconsistent. It's quite just an addition. Does it matter that that's an addition? Is that an important enough addition that we should hold it against him and say, wait a minute, your story's just getting too much better? No, Your Honor. There's two reasons for that. First, during the immigration court hearing, the immigration judge asked different types of follow-up questions, and as this court has illustrated before in Singh v. INS, it makes sense that someone would have different details about their story because you were asked different things at different points of your asylum case. Another case that is very— Wait, wait, wait. Before you leave the posters. At some point, the inconsistencies start to pile up, and it doesn't take much under the real ID act. And I have a problem with the posters because he originally said, as Judge Fletcher indicated, there's this bit about the posters. The IJ, by the time he got to the IJ, said, well, why did they even let you put up the posters? And he said, your client responded, well, they didn't respond to me. They just didn't talk to me at that point. But then later, before the IJ, he said they did talk to him, and they tore down the posters. Your Honor, I think— They hadn't just let him put them up. Your Honor, I think there is any perceived adverse— or any perceived non-credible testimony from Mr. Nuwaz based off of that can be attributed to the fact that he could have been confused on the stand. He hadn't been consulting his lawyer. And there's different timelines. He was putting up posters before the Shia prayer group, before the first attack, and he had consistently said that before the Shia attack, he hadn't received threats. And it wasn't until after the Shia attack, when they knew that he was part of this group and they had seen him putting up the posters, that they then continued to threaten him. And I think another case that's really illustrative of this point is Arlen Plon v. Ashcroft, where this court held that—where the asylum seeker in that case, he sought asylum at his credible fear interview. He just said that he was being hit by his government and he needed to seek asylum. Whereas when he was on the stand in front of the immigration court, he gave very horrific details of the torture he was facing by his government, such as being choked, gasoline poured on his head. And even in that case, this court said that those really crucial and memorable details to your asylum claim are not enough to uphold an adverse credibility determination. Okay, so he was inconsistent about the gun being fired. I think he's always said seven or eight men came to this outdoor prayer meeting and broke it up, basically, and that they had guns. I think that he always said they had guns and fired guns in the air. At one point, he said they fired into the crowd. And then after the hearing, in his September 7, 2017 declaration that he filed after the hearing, that's actually the bit of the timeline that I have the biggest part of the problem with. At that point, he said that he went back to saying he fired the gun in the air, but he also said they tortured us for half an hour. What about that? Your Honor, I believe that's consistent with what he said during his credible fear screening interview, where he talked about how he was tortured and how they were there for about half an hour. I believe the asylum officer had asked follow-up questions like how long were they there and to where he responded with that information. And, again, it's really about the questions he's being posed on the stand and how he's responding to them. At the end of all of the, after the credible interview and the asylum application and the hearing, at that point, there's a couple places where he is asked did anything else happen, and he makes reference to a threat conveyed to him through his mom and sister. Mom and wife? Through his father. That's different. Through the father was when they went to his shop. There's another threat conveyed through his mother and either wife or sister. And there's mentions of that earlier. Right? At the end of that process, that hearing, he's asked, you know, is there anything else? Did you have any specifically? Did you have any other problems between that time and the time you left a couple of months later? And he doesn't respond that there was anything else. But in the declaration, again, the declaration that he filed in September of 2017, that's the first time we see this other episode, that he was stopped on the street by three people on August 14, 2015, and personally threatened again. So what do we do about that? Because, again, what the IJ found was that his story was embellished. So I'm concerned about these additions. Your Honor, I think that those later revealed omissions can be chopped up to the fact that Mr. Nawaz simply did not know what he needed to talk about during his credible fear screening interview. He was asked questions, answered them truthfully. At the time, he didn't think there was anything else because, at the time, he was just thinking about the fact that he was attacked during the Shia prayer group. And it wasn't until later when he got an opportunity to consult asylum law and a lawyer that he realized that these threats were also important to his claim. He didn't mention this other threat, personal threat, to him on the street even during his hearing. This only came out after the hearing. Well, Your Honor, the same is true. The immigration judge was asking questions aimed at the threats, and Mr. Nawaz realized that these threats were important to his claim. And it makes sense that an asylum applicant wouldn't give all the details of their claim at that particular time or at the credible fear screening interview because that's not the purpose of a credible fear screening interview. It's just simply a mechanism in order to determine if someone is eligible to apply for asylum. Whereas the actual court, where there's live testimony and the asylum applicant gets to tell their full story, that allows the judge to determine if the person is actually eligible for asylum. And it's incongruous for an asylum judge, an immigration judge, to be able to ask questions aimed specifically at eliciting more details from the asylum applicant and then punish that asylum applicant when they give those additional details, especially when those details do not contradict the underlying core story, the underlying core story here being that he was attacked at the Shia prayer group, he continued to receive threats, he filed a police report, and the police did nothing for two months, and his family was scared for him and told him that he needed to leave this country and seek asylum. Let me just see if my colleagues have other questions. I think that's it for now. Okay. When you come back for planning purposes, we'll put two minutes on the clock. Thank you, Your Honors. You're welcome. Thank you. We'll hear from opposing counsel, please. Thank you. Good morning, Your Honors, and may it please the Court. Michael Heiss on behalf of the Respondent to the Attorney General of the United States. Something that was not discussed at all in Petitioner's affirmative argument is a critical threshold issue here, and that's exhaustion. None of these questions were presented to the Board. He filed a notice of appeal that challenged, quote, the application of incorrect standards. It says nothing about credibility. It says nothing about corroboration. Did the Board address credibility? It did not. The Board reviewed the immigration judge's decision and provided apparently as a courtesy. The Board could have summarily denied. But they didn't. They provided a single paragraph at the conclusion that doesn't get into any of these issues because none of the issues were put before the Board. If I decide that they're exhausted, well, then what's your fallback argument? I think these were teed up to the Board and they chose not to engage. That's my take on it, so I'm just inviting you to perhaps pivot to that. Your Honor, I'm not sure how incorrect standards includes the words credibility or corroboration or even could get to that point because those are very different things. This Court's case law is very generous in terms of pro se filings when it comes to exhausting issues, but not this generous. Counsel, are you going to pivot? I will. Okay. I will. I just want to be clear on that. I think you have been, and I appreciate that. This is going, this is stretching exhaustion beyond its conceivable limit. Nonetheless, substantial. Excuse me? I'm reading from the, there is no clear error in the IJ's finding of fact including those related to credibility. Sounds as though the BIA did address credibility. Not the questions petitioners are raising now. There's a whole slate of questions that are before this Court that the agency hasn't been asked to address, including new ones today. As I read that, the BIA addressed credibility and said, we agree with the IJ as to credibility. And in that case, substantial evidence supports the agency's decision regarding credibility. I didn't hear your other comment just a minute ago. Just that this in terms, if this notice of appeal is enough to put the Board on notice as is required for exhaustion, this would be stretching exhaustion beyond. We'd be relying on our case law to the effect that since the Board reached the question, the issue is exhausted. So I'm going to invite you to go on to the next argument. Okay. With respect to the credibility and cooperation findings, nonetheless substantial evidence supports the agency's finding. Your Honor pointed out numerous inconsistencies, omissions, and petitioners attempting to downplay them, including by citing pre-Real ID Act case law, which Your Honor noted. Now the Real ID Act is a lot different in terms of what is required to be proven or what is needed to substantiate an adverse credibility finding. This Court recently in Iman stated that, quote, omissions are probative of credibility to the extent that later disclosures, if credited, would bolster an earlier, typically weaker, asylum application. That's precisely what happened here. As the immigration judge pointed out, petitioner's story evolved. It expanded. That's embellishment, and that is absolutely a valid basis for an adverse credibility finding. It might be. Opposing counsel argues that he shouldn't be faulted for responding to the additional questions that I.J. asked to elicit additional details. What is your response to that, please? There's a difference between responding to questions and providing some details, and what we have here is him previously claiming that his group was threatened. He said that twice in his credible fear interview as well as his asylum application, that the group was threatened. Before the immigration judge, he's now claiming that he was singled out, that he was targeted, that he had been spotted before. He hadn't said that previously. Now he's saying, well, they saw me putting up posters, and then when questioned about that, did they talk to you? Yes, no, it's unclear whether they talked to him at that point. Did they tear down the posters? Did he continue putting up posters afterwards? But the critical point here is that he newly claimed to have been special, claimed to have been singled out, and that matters. That absolutely matters in terms of this. Claimed to be a leader, essentially. I think in context he's claiming to be a leader, right? Right. An organizer. That's a fundamentally different situation than being part of a group, being a parishioner. Some of this nuance, of course, it's a little hard to sift, isn't it? Some of it was pro se, some of it was not. And I think all of it was through an interpreter. Is that right? I believe so, yes. He was asked, again, that's another unexhausted claim. He claimed to have issues with the interpreter. He's now claiming to have had interpretation problems. He's claiming today for the first time to have potentially been confused during the immigration court proceedings or during the credible fear proceedings. None of this has been previously presented. One of the things he says during his credible fear interview is they continue to threaten me. Up until that point he's talking about the group. Right. But he does say me. He does. He could have provided more on that, and he was given that opportunity. He was given the opportunity to provide corroboration and the immigration judge. He was given the opportunity, but I'm not sure how many pointed questions there were that said, could you give me some detail? He was never asked, can you give me some detail about that? I believe Your Honor pointed out that he was given the opportunity to offer anything else he had to say. That's right, but in the sense of there was no question, well, they continue to threaten me. Well, tell me about the threats. That question was not asked. Certainly. We have a person testifying through a translator without a lawyer, and the follow-up question is not asked. It's a very general follow-up question at the end. Do you have any other problems in addition to what you told me? And he says no. But when he says they continue to threaten me, he's not asked, well, tell me what you mean. Certainly. Again, this is all a series of proceedings. He had his asylum application subsequent to that, his declaration with that. He didn't mention these things. He could have said. When you say these things, what things didn't he mention? The subsequent threats were not mentioned in his asylum application declaration. These last subsequent threats weren't even mentioned at the hearing. Correct. Those were added. I believe the August threats were not mentioned at the hearing. Those were added in the subsequent declaration. But the IJ didn't rely on that. For me, that's the largest discrepancy here. That's an entirely new episode, I think, and the IJ doesn't rely on it. Post-hearing declaration, not necessarily the most useful. Again, he was given the opportunity. But then there was another hearing. She got them together last time and said, okay, the record is complete, and then proceeds. So she had it all, right, and didn't call out the discrepancy we're talking about in the August of 2015 record in the declaration. Would you like to speak to that? At worst, that's harmless error, given the other substantial credibility problems present in this case. It's not a question of harmless error. I'm wondering whether we can rely on it is what I'm trying to say. And the court rely on it. I'm trying to ask because I'll just finish if I could. I'm wondering if we could rely on it because the IJ didn't. What's your response to that, please? If the immigration judge did not make a finding of fact on that point, probably not a good idea to rely on that. Okay. So what are your strongest omissions or inconsistencies, please? His newly claiming to have been singled out. That is of critical importance in this court's case law in terms of asylum eligibility. And how do you get away from his saying at the asylum credible fear interview, they continue to threaten me? Specific to the July 10th incident, he claimed he was singled out there. He newly claimed that he was the one they were going after at that time. Do you mean when you say he claimed he was singled out, are you now speaking about his testimony before the IJ? Yes. He newly claimed to have been singled out. Also, the corroboration findings here. Petitioner doesn't deny that the corroboration he provided contained identical language, three out of the four. And then the fourth mentioned this threat to his father's shop, provided a different date than Petitioner provided for it. So, again. Sometimes a different date in a circumstance like that tells me that there's been no coordination. Maybe. That could be an error. But, again, these are all issues that the agency needs the opportunity to discuss and was not put on notice as to these very specific points. Petitioner didn't raise these arguments before the court. Opposing counsel argues of, I think, Wren at one point, and says that when they gathered back for the hearing, the very last hearing, and the IJ recognized and went on to make the adverse credibility determination and called out several of the inconsistencies, certainly said that she thought the stories had been embellished, which is my word, but I think that's right. The opposing counsel, I think, argues that there should have been an opportunity for him to explain the inconsistencies. What is your response? He was given that opportunity. Specific to this incident, to being singled out and about the posters, I believe that's administrative record pages 134 to 136. That's off the top of my head. But that's during the hearing before the IJ as opposed to the very final round. The very final. Yeah. So suggesting that he should be given a subsequent opportunity to explain errors. Again, it's his burden of proof. If he had more to offer, he could have. He was told he needed to corroborate his story because he was providing inconsistent claims. And I believe he had counsel withdraw because he failed to provide these documents to him. And counsel essentially is saying, I can't help you if you don't help yourself. So he was given these opportunities. There's no suggestion here that he was denied due process or didn't have an opportunity to put on his best case. He simply failed to do so. Judge Endik, do you have questions? Any other questions? Thank you for your patience with our questions. We'll hear from opposing counsel. Thank you, Your Honor. Your Honors, there are two points I would like to address on rebuttal. First, the adverse credibility determination. As Judge Fletcher pointed out, Mr. Nawaz did not newly bring claims that Mr. Nawaz himself was threatened. He's been saying that the whole time. The core of his story is the same. And as Judge Christen pointed out, if the IJ had specific issues with alleged inconsistencies or perceived inconsistencies, then Mr. Nawaz should have been afforded an opportunity to discuss those inconsistencies. As to that, you know, we have, I think, our case law about exhaustion is very generous to you. But there is like this tension between saying, you know, the IJ never gave me an opportunity to explain the inconsistencies, and then your client never took advantage of the opportunity to tell the BIA about why these would be inconsistent. You see the challenge there? I recognize, Judge Van Dyke, the struggle between those two points in Mr. Nawaz's case. But at the time of the BIA appeal, Mr. Nawaz was representing himself, and he did try to file a brief with the BIA. It was untimely. Again, he was representing himself, and because it was three days late, the BIA did not consider that brief. Well, because it was three days late, and do I recall correctly that he didn't ask for an extension? You know, he never asked for that to be forgiven, right? Correct. And the BIA specifically pointed that out? Yes, correct, Your Honor. Mr. Nawaz is not part of the legal profession. I think it's fair that he made this mistake with not being able to file his brief. But at the time of the IJ, he was represented by counsel who did not, well, I'm not going to bring an ineffective assistance of counsel claim before this court, because I recognize that that is exhausted, whereas the other claims that the BIA addressed were not, and I see that I'm out of time. Yes, you are. I don't think there's any other questions from the panel. Thank you so much for your argument, both of you, and thank you for your participation in our pro bono program. We appreciate it very much. Thank you.
judges: FLETCHER, CHRISTEN, VANDYKE